SEYFARTH SHAW LLP
Brian Long (SBN 232746)
bplong@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:    (213) 270-9601

SEYFARTH SHAW LLP
Michael Afar (SBN 298990)
mafar@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendant
HYATT CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. BRUMBACH, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYATT CORPORATION d/b/a "Manchester Grand Hyatt San Diego," a Delaware corporation; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. **'20CV2231 WQHKSC**<br><br>**DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL**<br><br>(San Diego Superior Court, Case No. 37-2020-00036271-CU-OE-CTL<br><br>Date Action Filed:    October 9, 2020 |

66653599v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF, MICHAEL D. BRUMBACH, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Hyatt Corporation ("Defendant" or "Hyatt") files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action from the Superior Court for the County of San Diego to the United States District Court for the Southern District of California.  This Court has original jurisdiction under 28 U.S.C. §§ 1332(c), (d)(2)—the Class Action Fairness Act of 2005 ("CAFA").  Removal is proper for the following reasons:

## I.    BACKGROUND

1.    On October 9, 2020, Plaintiff Michael D. Brumbach ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of San Diego, titled "*MICHAEL D. BRUMBACH, on behalf of himself and all others similarly situated v. HYATT CORPORATION, d/b/a "Manchester Grand Hyatt San Diego," a Delaware corporation; and DOES 1 to 100, inclusive,*" Case No. 37-2020-00036271-CU-OE-CTL ("Complaint").

2.    On October 16, 2020, Defendant's registered agent for service of process in California received, via process server, a packet containing the Summons; Complaint; Civil Case Cover Sheet; Notice to the California Labor Workforce Development Agency ("LWDA"); Notice of Case Assignment and Case Management Conference; and ADR Information.  A true and correct copy of the packet received by Defendant is attached hereto as **Exhibit A**.

3.    On November 13, 2020, Defendant filed its Answer to Plaintiff's Complaint in San Diego County Superior Court.  A true and correct copy of the Answer filed to Plaintiff's Complaint is attached hereto as **Exhibit B**.

1

66653599v.1

4.     Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibit A through Exhibit B, in this action prior to this Notice of Removal.

## II.     TIMELINESS OF REMOVAL

5.     The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

6.     The service of process which triggers the 30-day period to remove is governed by state law.  *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.     This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendant's agent for service of process, on October 16, 2020.  Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).  Thirty (30) days from the service of the Complaint on Defendant on October 16, 2020 is November 16, 2020.[1]

---

[1]/     Thirty (30) days from October 16, 2020 is Sunday, November 15, 2020.  Pursuant to Fed. R. Civ. P. 6(a)(1)(C), the 30-day time period to remove this case continues to run to Monday, November 16, 2020.  *See* Fed. R. Civ. P 6(a)(1)(C) ("When the period is stated in days … include the last day of the period, but **if the last day is a** Saturday,

2

8.     Defendant's 30-day time limit to remove is triggered by Plaintiff's service of the Summons and the Complaint on October 16, 2020.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").  This Notice of Removal is timely because it is filed within thirty (30) days of personal service of the Summons and Complaint on December 13, 2019.  28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10.

9.     Plaintiff asserts seven (7) causes of action in his Complaint against Defendant: (1) failure to pay all wages due to illegal rounding; (2) failure to provide all meal periods; (3) failure to authorize and permit all paid rest periods; (4) failure to timely furnish accurate itemized wage statements; (5) violations of Labor Code § 203 (for waiting time penalties); (6) penalties pursuant to Labor Code § 2699 (under the Private Attorneys General Act of 2004 ("PAGA")); and (7) unfair business practices.  (Ex. A, Complaint, ¶¶ 32-112.)

10.     The Complaint seeks to certify multiple subclasses of employees, including "[a]ll California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only, to whom Defendants applied a time rounding policy and practice" and "[a]ll California citizens employed by Defendants as hourly-paid, non-exempt employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job with substantially similar titles and/or duties as these during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego restaurants/cocktail lounges."  (Ex. A, Complaint, ¶ 10.)

11.     Plaintiff's Seventh Cause of Action is based on an alleged "unfair business practices," in violation of California Business & Professions Code §§ 17200, *et seq*., the California Unfair Competition Law ("UCL").  (Ex. A, Complaint, ¶¶ 101-112.)  The

**Sunday**, or legal holiday, **the period continues to run until the end of the next day** that is not a Saturday, Sunday, or legal holiday") (emphasis added).

3

66653599v.1

statute of limitations on Plaintiff's Seventh Cause of Action for UCL is four years.  (*See* Cal. Bus. & Prof. Code § 17208.)

12.    Plaintiff alleges that Defendant violated the UCL, §§ 17200 *et seq.*, on the following grounds:

> Defendants have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by B&PC § 17200, including those set forth in the preceding and foregoing paragraphs of the complaint, thereby depriving the members of the 17200 Class of the minimum working standards and conditions due to them under the Labor Code and/or the IWC Wage Orders, as specifically described herein.

(Ex. A, Complaint, ¶ 105.)  Plaintiff further alleges that "Defendants have engaged in unfair business practices in California by practicing, employing and utilizing the employment practices outlined in the preceding paragraphs, specifically, by requiring employees to perform the labor services complained of herein without the requisite compensation" and that "Plaintiffs seek full restitution from Defendants, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein."  (Ex. A, Complaint, ¶¶ 106-109.)

13.    Plaintiff further alleges that "acts complained of herein occurred, occur and will occur, at least in part, within the time period from four (4) years preceding the filing of the original Complaint herein."  (Ex. A, Complaint, ¶ 3.)

14.    Accordingly, for purposes of the calculations in this Notice of Removal, the "relevant time period" starting "four years preceding the filing of this Complaint" is from **October 9, 2016** until the present.

## III.    CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

15.    This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at

least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); Declaration of Daniel Strittmatter in Support of Defendant's Notice of Removal ("Strittmatter Decl."), ¶¶ 6-7.

### A.    Plaintiff And Defendant Are Minimally Diverse

16.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Defendant (which is a citizen of Delaware and Illinois).

### 1.    Plaintiff Is A Citizen Of California

17.    For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state").  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

18.    Plaintiff alleges that he resides in the State of California.  (Ex. A, Complaint, ¶ 6; "Plaintiff MICHAEL D. BRUMBACH is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a citizen of the State of California.")  Plaintiff was also employed by Defendant at the Manchester

5

Grand Hyatt San Diego hotel located in San Diego, California, from approximately December 17, 2012 to January 15, 2020.  (Ex. A, Complaint, ¶ 7; Strittmatter Decl., ¶ 5.) Plaintiff's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit against Defendant in San Diego County Superior Court. Accordingly, Plaintiff is a citizen of California.

### 2.    Hyatt Is Not A Citizen Of California

19.    Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).  For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

20.    Defendant is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware.  (Declaration of Christina Urbanski in Support of Defendant's Notice of Removal ("Urbanski Decl."), ¶ 5.)  Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Delaware.

21.    Further, as shown below, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of Illinois.  (Urbanski Decl., ¶ 6.)  Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of Illinois.

22.    The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

23.     Under the "nerve center" test, Illinois emerges as Defendant's principal place of business.  Defendant's corporate headquarters are located in Chicago, Illinois where Defendant's high level officers direct, control, and coordinate Defendant's activities.  (Urbanski Decl., ¶ 6.)  Defendant's high level corporate officers maintain offices in Illinois, and many of Defendant's corporate level functions are performed in the Illinois office.  (Urbanski Decl., ¶ 6.) Additionally, many of Defendant's executive and administrative functions, including corporate finance and accounting, are directed from the Chicago, Illinois headquarters. (Urbanski Decl., ¶ 6.)

24.     Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the State of Delaware and the State of Illinois.  28 U.S.C. § 1332(c)(1).  Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Illinois, minimal diversity exists for purposes of CAFA.

25.     **Doe Defendants.**  Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").  Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal.  Thus, the existence of "DOES 1 through 100" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

## B.     The Amount In Controversy Exceeds The Statutory Minimum

26.     CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL

exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id.* at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

27.    **Preponderance Of The Evidence Standard.**  Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent.  Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum.  In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.  *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

28.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy

asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

29.   To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81,  135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

9

30.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

31.     It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

32.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

33.     **The Court Must Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.**  If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts

10

specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

34.    Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in

66653599v.1

controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

35.     The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000.  Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "[a]ll California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only, to whom Defendants applied a time rounding policy and practice" and "[a]ll California citizens employed by Defendants as hourly-paid, non-exempt employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job with substantially similar titles and/or duties as these during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego restaurants/cocktail lounges."  (Ex. A, Complaint, ¶ 10.)  Given that Plaintiff's Complaint was filed on October 9, 2020, for purposes of the calculations in this Notice of Removal the "relevant time period" is from **October 9, 2016** until the present.

36.     During the relevant time period identified in the Complaint, Defendant employed approximately 1,372 total current and former non-exempt, hourly employees at its properties in California, who worked a total of approximately 181,158 workweeks. (Strittmatter Decl., ¶ 6.)  The average hourly rate of pay for these individuals is approximately $18.40 per hour during the proposed class period.  (Strittmatter Decl., ¶ 7.)

37.     During the relevant time period identified in the Complaint, of the 1,372 total current and former non-exempt, hourly employees, approximately 653 individuals worked as "as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job with substantially similar titles and/or duties," as defined under Plaintiff's proposed subclasses for the Meal Period Class and the Rest Period Class.  (Ex. A, Complaint, ¶ 10(b), 10(c); Strittmatter Decl., ¶ 7.)  The average hourly rate of pay for these 653 individuals is approximately $16.36 per hour during the proposed class period.  (Strittmatter Decl., ¶ 7.)

38.     Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendants' alleged illegal rounding, failure to provide meal and rest breaks, failure to pay all wages due upon resignation or termination of employment,

failure to provide accurate and complete itemized wage statements, and unfair business practices. (Ex. A, Complaint.) Plaintiff also seeks attorneys' fees and costs. (Ex. A, Complaint, Prayer for Relief.) Plaintiff also seeks civil penalties under PAGA. (Ex. A, Complaint, ¶¶ 90-100.)

39.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000. **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**

40.     The calculations below show that the alleged amount in controversy exceeds $5,000,000, when considering non-exempt employees at Defendant's hotel, such as Plaintiff.

### 1.     Unpaid Minimum Wages Due To Illegal Rounding Claim

41.     Plaintiff's Complaint alleges that Defendant failed to pay minimum wages because Defendant "[a]dministered a uniform company policy and practice as to the rounding policies regarding the members of the Rounding Class; and [r]ounded the actual time worked and recorded by the members of the Rounding Class, usually down, so that during the course of their employment, the members of the Rounding Class were paid far less than they would have been paid had they been paid for actual recorded time rather than 'rounded' time." (Ex. A, Complaint, ¶ 40.) Plaintiff's Complaint further alleges that "Defendants required the members of the Rounding Class to remain Defendants' control without paying therefore, this resulted in the members of the Rounding Class earning less than the legal minimum wage in the State of California." (Ex. A, Complaint, ¶ 41.)

42.     Plaintiff claims that "Defendants' **pattern, practice and uniform administration** of corporate policy regarding illegal employee compensation as described herein is unlawful." (Ex. A, Complaint, ¶ 42; emphasis added.) Plaintiff further claims that a "common question" pertaining to the putative class is that

14

"Defendants' time rounding policies and practices are illegal." (Ex. A, Complaint, ¶ 30(c)(i).)

43. As stated above, during the relevant time period identified in the Complaint, Defendant employed approximately 1,372 current and former non-exempt, hourly employees in California, who worked a total of approximately 181,158 workweeks. (Strittmatter Decl., ¶ 6.) The average hourly rate of pay for these individuals is approximately $18.40 per hour during the proposed class period. (Strittmatter Decl., ¶ 6.)

44. Plaintiff does not, however, provide any details in terms of how many minutes or hours per day or week he and the putative class members were allegedly unpaid due to any alleged illegal rounding policy and practice. However, activities that take only ten minutes or less outside an employee's scheduled working hours are generally considered *de minimis* outside of California, and thus not compensable. *See*, *e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *Lindow v. United States*, 738 F.2d 1057, 1062, 1063 (9th Cir. 1984) ("[i]t is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved"; "most courts have found daily periods of 10 minutes *de minimis* even though otherwise compensable"). And, although the California Supreme Court recently held that the *de minimis* doctrine may not be available in defending against unpaid wage claims under the California Labor Code in many contexts, it addressed specifically instances involving regular or routine minutes of unpaid work, and indicated that the defense may still be available in the context of "minute or irregular" instances of compensable time. *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 835 (2018). Thus, in order to plead a claim for unpaid minimum wages, Plaintiff's allegations must necessarily involve time that is more than "*de minimis*" under California law.

45. Although Defendant denies Plaintiff's allegations or that he or the putative class are entitled to any relief, it is reasonable to assume strictly for purposes of this Notice of Removal, based on Plaintiff's allegations and the remaining applicability of the *de minimis* rule, that employees were unpaid, at minimum, 10 minutes of time per week

15

due to any alleged unlawful rounding policy or practice.  10 minutes per week of unpaid time is just a couple of minutes of alleged unpaid time before and after each shift.  As the Ninth Circuit and numerous district courts have held, an estimate of at least 10 minutes per class member per week is appropriate in light of Plaintiff's allegation that Defendants had a "pattern and practice" of wage abuse.  *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

46.     Accordingly, the reasonable estimate of the amount in controversy for Plaintiff's unpaid minimum wage cause of action, due to alleged unlawful rounding, is **$555,562.31** [($18.40/hour * 0.16667 hours (10 minutes) per week * 181,158 workweeks)].

## 2.     Meal and Rest Period Claims

47.     Plaintiff seeks payments for alleged denial of or missed or interrupted meal periods and rest periods.  (Ex. A, Complaint, ¶¶ 63-82.)  Plaintiff's Complaint alleges that

16

"[a]s a matter of Defendants' established company policy, Defendants failed to always comply with the meal period requirements … by failing to always provide the members of the Meal Period Class with a first and in some cases a second legally compliant meal period." (Ex. A, Complaint, ¶ 58.)

48.    Plaintiff's Complaint further alleges that "[a]s a matter of Defendants' established company policy, Defendants failed to always authorize and permit all required rest periods." (Ex. A, Complaint, ¶ 68.)

49.    For these alleged violations, Plaintiff seeks "damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of compensation for each work day that the meal period was not provided," and "damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of compensation for each work day that the meal period was not provided." (Ex. A, Complaint, ¶ 59, Prayer For Relief.)

50.    Plaintiff claims that a "common question" pertaining to the putative class is that "Defendants failed and continue to fail to provide legally-requisite meal periods to the members of the Meal Period Class" and that "Defendants failed and continue to fail to authorize and permit paid legally-requisite rest periods-to the members of the Rest Period Class." (Ex. A, Complaint, ¶ 30(c)(ii)-(iii).)

51.    California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code

17

section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

52.     The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years.  *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff alleges a claim for meal and rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, *et seq*.  (Ex. A, Complaint, ¶ 120.)  Although Defendant contends that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiff's FAC, the four-year statute of limitations applies for purposes of removal.  Cal. Bus. & Prof. Code § 17208.  Thus, for determining the amount in controversy, the four-year statute of limitations applies.

53.     Plaintiff is silent as to the amount of alleged meal periods or rest periods he claims to have been denied, thereby precluding precise estimates of the amount in controversy.  Because Plaintiff alleges that Defendant had a "common" policy and practice of not providing the putative class with all meal periods and rest periods (Ex. A, Complaint, ¶¶ 30(c)), while also alleging that Plaintiff's claims are "typical of the claims of all members of the Classes he seeks to represent" (Ex. A, Complaint, ¶ 30(a)), the Complaint contemplates a 100% violation rate for the meal period and rest period claims.  Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal and rest period claims.  *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%").

54.     While Defendant is entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations

18

in the Complaint, Defendant will conservatively assume that putative class members were not provided **just one** meal period and one rest period each workweek.[2]  Where Plaintiff has alleged a policy and practice of meal and rest period violations, it is reasonable to assume that there at least one meal period **or** one rest period violation each week for every employee.  Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods.  Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant

---

[2]/     Plaintiff cannot allege that this action involves "common questions of law and/or fact as to the members of the Classes which predominate over questions affecting only individual members of the Classes" (Ex. A, Complaint, ¶ 30(c)), without also implicitly alleging that each putative class member suffered at least one meal period and one rest period violation per week.

maintained "policies, practices and procedures that caused the purported violations. . .");
*Lopez v. Aerotek, Inc.*,  2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding
defendant's estimate of five meal period and five rest period violations was reasonable);
*Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010)
("Plaintiff included no limitation on the number of violations, and, taking his complaint
as true, Defendants could properly calculate the amount in controversy based on a 100%
violation rate," i.e., 5 missed meal periods and five missed rest breaks per week).  *Accord Arias*, 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it
assumed "one missed rest break" as the "lowest assumed violation rate").

55.    As stated above, during the relevant time period identified in the Complaint
and for the Meal Period Subclass and Rest Period Subclass defined by Plaintiff,
Defendant employed approximately 653 non-exempt, hourly employees in California,
who worked a total of approximately 91,788 workweeks.  (Strittmatter Decl., ¶ 7.)  The
average hourly rate of pay for these individuals is approximately $16.36 per hour during
the proposed class period.  (Strittmatter Decl., ¶ 7.)

56.    Although Defendant denies that Plaintiff (or any putative class member) is
entitled to any meal or rest period premium payments, assuming **just one meal period
violation and one rest period violation per week** for each putative class member, the
amount in controversy would be approximately $3,003,303.36 [(91,788 workweeks) *
($16.36 per hour) * (2 premium payments per week)].  Accordingly, the amount in
controversy on Plaintiff's meal and rest period claims is between approximately
**$3,003,303.36**.

### 3.    Waiting Time Penalties

57.    Plaintiff's Complaint also alleges that Defendant failed to timely pay wages
due at termination, in violation of California Labor Code §§ 201-203.  Plaintiff alleges
that "Defendants had a consistent and uniform policy, practice and procedure of willfully
failing to pay the earned wages of Defendants' former employees."  (Ex. A, Complaint,
¶ 86.)  Plaintiff further alleges that "Defendants willfully failed to pay the members of the

LC 203 Class their entire wages due and owing at the time of their termination or within seventy-two (72) hours of their resignation, and failed to pay those sums for up to thirty (30) days thereafter." (Ex. A, Complaint, ¶ 87.)

58.     On these grounds, Plaintiff seeks "waiting time penalties" under California Labor Code § 203. (Ex. A, Complaint, ¶ 89.) Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

59.     The statute of limitations period for California Labor Code § 203 penalties extends back only three years from the date of filing of the complaint, or December 6, 2016. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

60.     It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

61.     In addition, because Plaintiff does not allege that some (or any) class members worked part time, it is reasonable to assume that each employee worked eight hour shifts. *See Wheatley*, 2019 WL 688209, at *6 ("it is reasonable for Defendant to assume eight-hour shifts").

62.     During the relevant three-year time period for waiting time penalties, from October 9, 2017 to the present, there were a total of approximately 825 non-exempt hourly employees who were terminated from employment with Defendant.  The average hourly rate of pay for these individuals is approximately $17.52 per hour during the relevant three-year period.  (Strittmatter Decl., ¶ 8.)

63.     Although Defendant disputes liability, the total amount in controversy on Plaintiff's claim for waiting time penalties is **$3,468,960.00** [$17.52/hour * 8 hours/day * 30 days * 825 former hourly employees].

### 4.     Wage Statement Penalties

64.     Plaintiff's Complaint alleges that "[a]s a pattern and practice … Defendants did not and still do not furnish each of the members of the Wage Statement Class with an accurate itemized statement."  (Ex. A, Complaint, ¶ 75.)  Based on this alleged violation, Plaintiff claims that he and other class members are "the members of the Wage Statement Class are entitled to fifty dollars ($50.00) per employee for the initial pay period in which a violation hereunder occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00)."  (Ex. A, Complaint, ¶ 80.)

65.     Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct*., 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Plaintiff filed his Complaint on October 9, 2020.  Therefore, the statutory period for a claim under California Labor Code § 226 runs from October 9, 2019 to the present.

66.     Defendant pays its non-exempt employees every two weeks.  (Strittmatter Decl., ¶ 9.)  Accordingly, there are 26 pay periods per year.  (*Id.*)

67.     During the relevant time period, there were approximately 22,570 pay periods worked by the alleged class members.  (Strittmatter Decl., ¶ 10.)  Even under a

very conservative application of a $50 penalty for each pay period (rather than a higher $100 penalty that could apply for subsequent violations), the amount in controversy for Plaintiff's wage statement claim is **$1,128,500.00** [22,570 pay periods * $50].

### 5. Approximate Aggregate Amount In Controversy

68.     Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is approximately **$8,156,325.67**, calculated as follows:

- **$555,562.31**          Unpaid Wages Due To Rounding Claim

- **$3,003,303.36**        Meal/Rest Period Claim (Assuming Just 1 Missed Meal Period And 1 Missed Rest Period Per Workweek)

- **$3,468,960.00**        Waiting Time Penalties

- **$1,128,500.00**        Wage Statement Penalties

69.     The figures above do not take into account Plaintiff's claim for PAGA penalties, attorneys' fees and costs, or Plaintiff's claim for liquidated damages for his unpaid wages claim.

### 6. Attorneys' Fees

70.     Plaintiff also seeks attorneys' fees.  (Ex. A, Complaint, Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.")

23

71.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

72.     In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

73.     Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases."  *Arias*, 936 F.3d at 922.

74.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019)

24

(finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

75.    Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$2,039,081.42** in this case [$8,156,325.67 total amount in controversy * 0.25].

76.    Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is **$10,195,407.10**, including attorneys' fees.  This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

77.    Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

78.   To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

**IV.   VENUE**

79.   Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(d).  This action originally was brought in San Diego County Superior Court of the State of California, which is located within the Southern District of California.  28 U.S.C. § 84(d).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

80.   A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Diego County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

**V.   NOTICE TO STATE COURT AND TO PLAINTIFF**

81.   Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in the County of San Diego.  The Notice of Removal is concurrently being served on all parties.

**VI.   PRAYER FOR REMOVAL**

82.   WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

DATED: November 16, 2020                    Respectfully submitted,

                                            SEYFARTH SHAW LLP

                                            By:  /s/ Michael Afar
                                                Brian Long
                                                Michael Afar
                                            Attorneys for Defendant
                                            HYATT CORPORATION

66653599v.1