# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. BRUMBACH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION, a Delaware corporation doing business as Manchester Grand Hyatt San Diego; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 20-cv-2231-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Remand to State Court filed by Plaintiff Michael D. Brumbach. (ECF No. 7).

## I.  BACKGROUND

On October 9, 2020, Plaintiff Michael D. Brumbach filed a Class Action Complaint against Defendants Hyatt Corporation d/b/a Manchester Grand Hyatt San Diego ("Hyatt") and Does 1 through 100 in the Superior Court for the State of California, County of San

Diego. (Ex. A to Notice of Removal, ECF No. 1-2 at 6). In the Complaint, Brumbach alleges that Defendants violated California's wage and hour laws with respect to hourly, non-exempt employees at the Manchester Grand Hyatt San Diego ("Manchester Grand"). Brumbach alleges that Defendants failed to pay wages because of illegal time rounding, failed to provide legally requisite meal and rest periods, failed to timely provide accurate itemized wage statements, and failed to timely pay wages due to terminated employees.

Brumbach seeks to represent the following classes:

All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only, to whom Defendants applied a time rounding policy and practice as specifically described herein (hereinafter, the "Rounding Class");

All California citizens employed by Defendants as hourly-paid, non-exempt employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job positions with substantially similar titles and/or duties as these during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego restaurants/cocktail lounges (including but not limited to Top of the Hyatt, GrandEats, Sally's Fish House & Bar, Brew30 California Taps, The Landing, Seaview, and Pool Bar & Grill) only, who were subjected to Defendants' policies and practices regarding meal periods as specifically described herein (hereinafter, the "Meal Period Class");

All California citizens employed by Defendants as hourly-paid, non-exempt employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job positions with substantially similar titles and/or duties as these during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego restaurants/cocktail lounges (including but not limited to Top of the Hyatt, GrandEats, Sally's Fish House & Bar, Brew30 California Taps, The Landing, Seaview, and Pool Bar & Grill) only, who were subjected to Defendants' policies and practices regarding paid rest periods as specifically described herein (hereinafter, the "Rest Period Class");

All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester

2

20-cv-2231-WQH-KSC

Grand Hyatt San Diego only, who were subjected to Defendants' policies and practices regarding itemized wage statements as specifically described herein (hereinafter, the "Wage Statement Class");

All formerly-employed California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only, who were subjected to Defendants' policies and practices regarding Labor Code § 203 and the payment of final wages as specifically described herein (hereinafter, the "LC 203 Class"); and

All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only, regarding whom Defendants have engaged in unlawful, unfair and/or fraudulent business acts or practices prohibited by B&PC § 17200, et seq. as specifically described herein (hereinafter, the "17200 Class").

(*Id.* ¶ 25).

The following claims are alleged against Defendants: 1) failure to pay all wages due to illegal rounding on behalf of the Rounding Class; 2) failure to provide all meal periods on behalf of the Meal Period Class; 3) failure to authorize and permit all paid rest periods on behalf of the Rest Period Class; 4) failure to timely furnish accurate itemized wage statements on behalf of the Wage Statement Class; 5) violations of section 203 of the California Labor Code on behalf of the LC 203 Class; 6) penalties pursuant to section 2699 of the California Labor Code on behalf of "Aggrieved Employees" (*id.* at 27); and 7) unfair business practices on behalf of the 17200 Class. Brumbach and the classes seek recovery of unpaid wages, liquidated damages, statutory penalties, an accounting, restitution, declaratory relief, injunctive relief, and attorneys' fees and costs.

On November 16, 2020, Defendant Hyatt removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1). In the Notice of Removal, Hyatt alleges that there are at least 100 members of the class, that the parties are minimally diverse, and that the amount in controversy exceeds $5,000,000.

Hyatt alleges that the "relevant time period" for calculating the amount in controversy is "October 9, 2016 until the present." (*Id.* ¶ 14 (emphasis omitted)).

Hyatt attaches to the Notice of Removal the Declaration of Daniel Strittmatter, "Analyst – HRIT Reporting & Analytics for Defendant Hyatt . . . ." (Strittmatter Decl., ECF No. 1-4 ¶ 2). Strittmatter states that in his position he has "access to Human Resources information and payroll records of current and former employees . . . ." (*Id.* ¶ 3). Strittmatter states that he "reviewed relevant portions" of "payroll records of current and former employees of [Hyatt]" and "employment and compensation information for other current and former employees of [Hyatt], which are kept in the ordinary course of business, under the direction and control of [Hyatt]'s executives." (*Id.*). Strittmatter states that based on his review of company records during the relevant time period,

> [Hyatt] employed approximately 1,372 total current and former non-exempt, hourly employees at the Manchester Grand Hyatt San Diego hotel, who worked a total of approximately 181,158 workweeks. The average hourly rate of pay for these individuals is approximately $18.40 per hour during the proposed class period.

(*Id.* ¶ 6). Strittmatter states:

> [O]f the 1,372 total current and former non-exempt, hourly employees, approximately 653 individuals worked [ ] "as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job[s] with substantially similar titles and/or duties," as defined in Plaintiff's proposed subclasses for the Meal Period Class and Rest Period Class, for a total of approximately 91,788 workweeks. The average hourly rate of pay for these 653 individuals is approximately $16.36 per hour during the proposed class period.

(*Id.* ¶ 7). Strittmatter states:

> From October 9, 2017 to the present, there were a total of approximately 825 non-exempt hourly employees at the Manchester Grand Hyatt San Diego Hotel who were terminated from employment with [Hyatt]. The average rate of pay for these individuals is approximately $17.52 per hour.

(*Id.* ¶ 8). Strittmatter states that there are twenty-six pay periods per year, and "[f]rom October 9, 2019 to the present, there were approximately 22,570 pay periods worked by the alleged class members at the Manchester Grand Hyatt San Diego hotel." (*Id.* ¶ 10).

In the Notice of Removal, Hyatt alleges that the amount in controversy is $8,156,325.67, exclusive of penalties under the California Labor Code Private Attorneys General Act of 2004, liquidated damages on the unpaid wages claim, and attorneys' fees and costs. Hyatt calculates the amount in controversy based on the following assumptions: 1) each of the 1,372 employees making an average of $18.40 per hour incurred 10 minutes of unpaid work time during each of the 181,158 workweeks, totaling $555,562.31 on the first claim for unlawful rounding; 2) each of the 653 food service employees making an average of $16.36 per hour incurred one missed meal period and one missed rest period per week during each of the 91,788 workweeks, totaling $3,003,303.36 on the second and third claims for meal and rest period violations; 3) each of the 1,372 employees were subject to one wage statement violation during each of the 22,570 pay periods, totaling $1,128,500.00 on the fourth claim for wage statement violations; and 4) each of the 825 terminated employees making an average of $17.52 per hour worked eight-hour shifts and waited the maximum 30-days for termination pay, totaling $3,468,960.00 on the fifth claim for waiting time penalties. Hyatt alleges that, using a "conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of $2,039,081.42 in this case," bringing the total amount in controversy to $10,195,407.10. (*Id.* ¶ 76).

On December 16, 2020, Brumbach filed a Motion to Remand to State Court. (ECF No. 7). Brumbach asserts that Hyatt fails to plausibly allege that the class has over 100 members and that the amount in controversy exceeds $5,000,000. On January 5, 2021, Hyatt filed an Opposition to the Motion to Remand, including a Supplemental Declaration of Daniel Strittmatter. (ECF No. 12). Hyatt asserts that it plausibly alleges that there are more than 100 members in the class and demonstrates by a preponderance of the evidence

that the amount in controversy exceeds $5,000,000. On January 12, 2021, Brumbach filed a Reply. (ECF No. 13).

## II. LEGAL STANDARD

"Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84-85 (2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B)). "A defendant seeking removal must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal . . . .'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas*, 553 F.3d at 1244 (citing 28 U.S.C. § 1447(c)). "[R]emand may be ordered either for lack of subject matter jurisdiction or for 'any defect' in the removal procedure." *Aguon-Schulte v. Guam Election Comm'n*, 469 F.3d 1236, 1240 (9th Cir. 2006) (quoting 28 U.S.C. § 1447(c)). The removing party "always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89. A removing defendant need only show "'that the potential damages could exceed the jurisdictional amount.'" *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)).

## III. NUMBER OF CLASS MEMBERS

Brumbach contends that Hyatt fails to plausibly allege that the class has over 100 members. Brumbach contends that that Notice of Removal improperly includes all

California Hyatt employees in the class rather than just employees at the Manchester Grand. Hyatt contends that it plausibly alleges that the class has over 100 members. Hyatt contends that it tailors the putative class to employees at the Manchester Grand, as defined in the Complaint.

In the Complaint, Brumbach brings claims on behalf of several classes of "California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only" who were subject to Defendants' wage and hour violations. (Ex. A to Notice of Removal, ECF No. 1-2 ¶ 25). Brumbach alleges that wage and hour violations "occurred, occur and will occur, at least in part, within the time period from four (4) years preceding the filing of the original Complaint herein, up to and through the time of trial . . . ." (*Id.* ¶ 3).

In the Notice of Removal, Hyatt alleges that "the number of putative class members is greater than 100." (ECF No. 1 ¶ 15). Hyatt alleges that "appropriate time period" or "relevant time period" for determining the number of class members is "October 9, 2016 until the present"—four years preceding the filing of the Complaint on October 9, 2020. (Ex. A to Notice of Removal, ECF No. 1-2 ¶ 25; ECF No. 1 ¶ 14). Daniel Strittmatter, "Analyst – HRIT Reporting & Analytics for Defendant Hyatt . . .," states in his Declaration attached to the Notice of Removal that, "[b]ased on [his] review of company records, during the relevant time period identified in the Complaint, [Hyatt] employed approximately 1,372 total current and former non-exempt, hourly employees at the Manchester Grand Hyatt San Diego hotel[.]" (Strittmatter Decl., ECF No. 1-4 ¶¶ 2, 6).

Hyatt's allegation that there are more than 100 members of the class is supported by Strittmatter's Declaration and the allegations in the Complaint. The Court concludes that Hyatt plausibly alleges that the class has more than 100 members under CAFA.

## IV. AMOUNT IN CONTROVERSY

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, asserted in good faith, is 'deemed to be the

amount in controversy.'" *Dart Cherokee*, 574 U.S. at 84 (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)).

"If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 88 (alterations in original) (quoting 28 U.S.C. § 1446(c)(2)(B)). "[W]hen a defendant's assertion of the amount in controversy is challenged . . ., both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "[T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199.

In this case, the amount in controversy is not facially apparent from the face of the Complaint. Brumbach challenges Hyatt's assertion that the amount in controversy exceeds $5,000,000. Both parties had "the opportunity to place evidence on the record supporting their respective positions as to the amount in controversy[.]" *Harris v. KM Indus., Inc.*, 980 F.3d 694, 702 (9th Cir. 2020). Hyatt is the only party that submitted evidence, consisting of the Declaration of Daniel Strittmatter attached to the Notice of Removal and Strittmatter's Supplemental Declaration attached to the Opposition to the Motion to Remand.

///

///

### A. First Claim for Unlawful Rounding

Brumbach contends that Hyatt uses an incorrect class period to calculate the amount in controversy on the unlawful rounding claim. Brumbach contends that Hyatt's calculations "continue to the present even though the Complaint alleges the rounding practices ended on approximately June 1, 2019." (ECF No. 7 at 17). Brumbach contends that Hyatt's assumption that "[e]very single employee suffered 10 minutes of unpaid time a week due to rounding" is unreasonable because Hyatt has access to the documents necessary to calculate the actual difference between recorded time and rounded time. (*Id.* at 16). Brumbach contends that Hyatt improperly "relies solely on a single vague declaration" from an IT technician to support its allegations. (*Id.* at 15).

Hyatt contends that the class period it used to calculate the amount in controversy is reasonable because Brumbach does not allege an end date for the unlawful rounding. Hyatt contends that its assumption that employees incurred ten minutes of uncompensated time per week due to unlawful rounding is conservative and reasonable based on Brumbach's allegations that Defendants had a uniform company policy of rounding time. Hyatt contends that it is not required to provide a precise calculation of unpaid time per week or to prove Brumbach's case in order to demonstrate by a preponderance of the evidence that the amount in controversy requirement is met. Hyatt contends that "declarations from company employees with personal knowledge about the relevant facts are consistently considered relevant evidence for purposes of calculating the amount in controversy." (ECF No. 12 at 26).

In the Complaint, Brumbach brings the first claim for failure to pay all wages due to illegal rounding on behalf of the Rounding Class, which consists of "[a]ll California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only, to whom Defendants applied a time rounding policy and practice as specifically described herein." (Ex. A to Notice of Removal, ECF No. 1-2 ¶ 25). Brumbach alleges that "Defendants, as a matter of established company policy and procedure, consistently, until at least

approximately June 1, 2019: [a]dministered a uniform company policy and practice" of "[r]ound[ing] the actual time worked and recorded by the members of the Rounding Class . . . so that during the course of their employment, the members of the Rounding Class were paid far less than they would have been paid had they been paid for actual recorded time . . . ." (*Id.* ¶ 40). Brumbach further alleges that wage and hour violations "occurred, occur and will occur, at least in part, within the time period from four (4) years preceding the filing of the original Complaint herein, up to and through the time of trial . . . ." (*Id.* ¶ 3). Brumbach and the Rounding Class seek recovery of the unpaid balance of straight-time compensation, recovery of the unpaid balance of overtime compensation, and liquidated damages on the straight-time of uncompensated hours of work.

In the Notice of Removal, Hyatt alleges that the amount in controversy on the rounding claim is $555,562.31. Hyatt alleges that the "relevant time period" for calculating the amount in controversy on the rounding claim is "October 9, 2016 until the present"—four years preceding the filing of the Complaint on October 9, 2020. (ECF No. 1 ¶ 14). Daniel Strittmatter states in his Declaration attached to the Notice of Removal that in his position as "Analyst – HRIT Reporting & Analytics for Defendant Hyatt," he has "access to Human Resources information and payroll records of current and former employees . . . ." (Strittmatter Decl., ECF No. 1-4 ¶¶ 2, 3). Strittmatter states that he "reviewed relevant portions" of "payroll records of current and former employees of [Hyatt]" and "employment and compensation information for other current and former employees of [Hyatt], which are kept in the ordinary course of business, under the direction and control of [Hyatt]'s executives." (*Id.* ¶ 3). Strittmatter states:

> Based on my review of company records, during the relevant time period identified in the Complaint, [Hyatt] employed approximately 1,372 total current and former non-exempt, hourly employees at the Manchester Grand Hyatt San Diego hotel, who worked a total of approximately 181,158 workweeks. The average hourly rate of pay for these individuals is approximately $18.40 per hour during the proposed class period.

(*Id.* ¶ 6). Hyatt assumes that each of the 1,372 employees is entitled to ten minutes of unpaid time for each of the 181,158 workweeks.

The amount in controversy "reflects the maximum recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Hyatt's calculation of the class period on the unlawful rounding claim as October 9, 2016, to the present is consistent with Brumbach's allegations that wage and hour violations occurred from four years preceding the filing of the Complaint through trial, and that unlawful rounding occurred "until *at least* approximately June 1, 2019[.]" (Ex. A to Notice of Removal, ECF No. 1-2 ¶ 40 (emphasis added)).

Hyatt has come forward with evidence, uncontroverted by Brumbach, of the number of employees at the Manchester Grand, the employees' average pay, and the number of workweeks during the class period. Strittmatter's Declaration is based on his review of corporate documents that he has access to in his position as an analyst for Hyatt and is appropriate evidence to support an amount in controversy calculation. *See Ibarra*, 775 F.3d at 1197 ("The parties may submit evidence outside the complaint, including affidavits or declarations, . . . [']relevant to the amount in controversy at the time of removal.'" (quoting *Singer*, 116 F.3d at 377)). Because Brumbach has contested the reasonableness of Hyatt's assumption that each employee incurred ten minutes of uncompensated time per workweek, Hyatt has "the burden of proving by a preponderance of the evidence that its assumptions were reasonable." *Harris*, 980 F.3d at 700-01. However, Hyatt "need not make [Brumbach]'s case . . . or prove the amount in controversy beyond a legal certainty." *Id.* at 701; *see Arias*, 936 F.3d at 927 (a defendant is not required to "prove it actually violated the law at the assumed rate"). Hyatt's assumption that each employee incurred ten minutes of uncompensated time per workweek is reasonable in light of Brumbach's allegations that Hyatt "consistently" and "uniform[ly]" failed to pay employees due to illegal rounding. Ex. A to Notice of Removal, ECF No. 1-2 ¶ 40; *see Arias*, 936 F.3d at 927 (the assumption that plaintiffs incurred six minutes of unpaid overtime per day "[is] plausible and may prove to be reasonable in light of the allegations in the complaint" that

defendants "routinely" failed to pay overtime wages); *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188-89 (E.D. Cal. 2016) ("[W]here a plaintiff's complaint specifically alleges a 'uniform' practice, if a defendant in its amount-in-controversy calculus assumes a 100 percent violation rate *and* the plaintiff offers no competent evidence in rebuttal to a defendant's showing, courts have found a defendant's assumption to be reasonable."). The Court concludes that Hyatt's assertion that the amount in controversy on the unlawful rounding claim is $555,562.31 is supported by the evidence presented, the allegations in the Complaint, and reasonable assumptions.

### B. Second and Third Claims for Meal and Rest Period Violations

Brumbach contends that Hyatt fails to explain the criteria it used to establish the number of members of the Meal and Rest Period Classes. Brumbach contends that Hyatt "offers no proof that all alleged 653 class members worked sufficiently long shifts to qualify them for meal and rest periods." (ECF No. 7 at 20). Brumbach contends that Hyatt's assumptions regarding the Meal and Rest Period Classes are contradictory to the allegations in the Complaint that class members worked sufficiently long shifts to entitle them to a meal break "on one or more occasions" and worked sufficiently long shifts to entitle them to a rest break "sometimes." (*Id.*).

Hyatt contends that it is not required to provide evidence of employee shift length to support its calculations. Hyatt asserts that out of the 653 employees it identified as members of the Meal and Rest Period Classes, 335 worked five days per week, eight hours per day. Hyatt contends that that it is reasonable to assume that each of these full-time employees incurred one meal and one rest period violation per workweek. Hyatt further contends that assuming one meal and one rest period violation per workweek for each class member is reasonable based on the allegations that Defendants had a policy of failing to provide meal and rest periods.

In the Complaint, Brumbach brings the second and third claims for meal and rest period violations on behalf of the Meal and Rest Period Classes, which consist of

[a]ll California citizens employed by Defendants as hourly-paid, non-exempt

> employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job positions with substantially similar titles and/or duties as these during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego restaurants/cocktail lounges (including but not limited to Top of the Hyatt, GrandEats, Sally's Fish House & Bar, Brew30 California Taps, The Landing, Seaview, and Pool Bar & Grill) only, who were subjected to Defendants' policies and practices regarding [rest or] meal periods . . . .

(Ex. A to Notice of Removal, ECF No. 1-3 ¶ 25). Brumbach alleges that, "[o]n one or more occasions, the members of the Meal Period Class worked over five (5) hours per shift and therefore were entitled to an interrupted meal period . . . ." (*Id.* ¶ 54). Brumbach alleges that "[a]s a matter of Defendants' established company policy, Defendants failed to always comply with the meal period requirements . . . by failing to always provide the members of the Meal Period Class with a . . . legally compliant meal period." (*Id.* ¶ 58). Brumbach alleges that "[t]he members of the Rest Period Class sometimes worked over four (4) hours per shift. Further, the members of the Rest Period Class sometimes worked over six (6) hours per shift[.]" (*Id.* ¶ 66). Brumbach alleges that "[a]s a matter of Defendants' established company policy, Defendants failed to always authorize and permit all required rest periods . . . ." (*Id.* ¶ 69). Brumbach and the Meal and Rest Period Classes seek "one (1) hour of pay at the regular rate of compensation for each member of the Meal Period Class for each workday that a meal or rest period was not provided" and "one (1) hour of pay at the regular rate of compensation for each member of the Rest Period Class for each workday that a meal or rest period was not provided[.]" (*Id.* at 33).

In the Notice of Removal, Hyatt alleges that the amount in controversy on the meal and rest period claims is $3,003,303.36. Strittmatter states in his Declaration:

> [O]f the 1,372 total current and former non-exempt, hourly employees, approximately 653 individuals worked [ ] "as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job[s] with substantially similar titles and/or duties," as defined in Plaintiff's proposed subclasses for the Meal Period Class and Rest Period Class, for a total of approximately 91,788 workweeks. The average hourly rate of pay for these 653 individuals is approximately $16.36 per hour during

the proposed class period.

(Strittmatter Decl., ECF No. 1-4 ¶ 7). Hyatt assumes that each of the 653 employees worked shifts long enough to qualify them for at least one meal period and one rest period every workweek, and each of the employees missed one meal period and rest period per workweek.

In the Supplemental Declaration submitted with Hyatt's Opposition to the Motion to Remand, Strittmatter states:

> Of the 653 employees, 335 are full-time employees. By definition of being a "full-time" employee, these individuals work shifts that are typically five days per week, eight hours per day, for a total of 40 hours per week. The 335 full-time employees worked a collective total of 49,853 workweeks during the class period proposed by Plaintiff, at an average rate of pay of $18.04 per hour.

(Strittmatter Supp. Decl., ECF No. 12-1 ¶ 7). In the Opposition to the Motion to Remand, Hyatt recalculates the amount in controversy on the meal and rest periods claims based on full-time employees as $1,798,696.24.

The California Labor Code provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.

Cal. Lab. Code § 512(a). IWC Wage Order 8 provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours.

Cal. Code Regs. tit. 8, § 111080(12)(A).

In *Harris*, the plaintiff brought a class action complaint alleging wage and hour violations, including meal and rest period violations. 980 F.3d 694. The plaintiff defined the meal and rest period classes to include California hourly, non-exempt employees who worked a shift in excess of five hours during the class period (meal period class) and/or worked a shift of at least 3.5 hours during the class period (rest period class). *Id.* at 697. The defendant removed the action to federal court. In calculating the amount in controversy on the meal and rest period claims, the defendant assumed that all of its California hourly, non-exempt employees were members of the meal and rest period classes and that each employee missed one meal break and two rest breaks per pay period. *Id.* at 698. The district court granted the plaintiff's motion to remand, finding that the defendant failed to present evidence supporting its assumption that all hourly employees worked shifts long enough to qualify as members of the meal and rest period classes. *Id.* at 699. The Court of Appeals for the Ninth Circuit affirmed the district court's decision. The Court of Appeals determined that the defendant

> relied on assumptions regarding the Meal Period and Rest Period subclasses that were unreasonable. As the district court found, [the defendant] has failed to provide *any* evidence to support its assumption that all 442 Hourly Employee Class members were the same as the members of the Meal Period Sub-Class or the Rest Period Sub-Class or that they all worked shifts long enough to qualify for meal or rest periods.

*Id.* at 701.

In this case, Brumbach defines the Meal and Rest Period Classes to include certain food service employees who were subject to Defendants' allegedly unlawful meal and rest period policies and practices. Hyatt has come forward with evidence, uncontroverted by Brumbach, that during the class period there were 653 employees in food service positions at the Manchester Grand. Hyatt has further come forward with evidence that 335 of those employees worked eight-hour shifts, five days per week on 49,853 workweeks—long enough to entitle them to at least one rest period and one meal break per day under the California Labor Code. *See* Cal. Lab. Code § 512(a); Cal. Code Regs. tit. 8, §

111080(12)(A). Based on the allegations in the Complaint that Hyatt had a "policy" of failing to always provide legally required meal and rest breaks, Hyatt's assumption that each of the 335 full-time food service employees missed one meal break and one rest break per week is reasonable. The Court concludes that Hyatt's assertion that the amount in controversy on the meal and rest period claims is $1,798,696.24 is supported by the evidence presented, the allegations in the Complaint, and reasonable assumptions.

### C. Fifth Claim for Waiting Time Penalties

Brumbach contends that he alleges that the unlawful rounding policy ended in June 2019, so waiting time penalties "would be predicated solely on the meal and rest break claims" because of the statute of limitations. (ECF No. 7 at 24). Brumbach contends that Hyatt fails to provide evidence of the number of restaurant employees separated after June 2019. Hyatt contends that it is "not realistic" to "assum[e] that every single employee who separated from his or her employment suffered unpaid wages . . . ." (*Id.*).

Hyatt contends that the allegations in the Complaint do not support an inference that waiting time penalties are based solely on a failure to provide meal and rest periods payments. Hyatt contends that it reasonable to assume that the entire class of terminated employees is entitled to waiting time penalties based on the allegations in the Complaint.

In the Complaint, Brumbach brings the fifth claim for waiting time penalties on behalf of the LC 203 Class, which consists of

> [a]ll formerly-employed California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period at Defendants' Manchester Grand Hyatt San Diego only, who were subjected to Defendants' policies and practices regarding Labor Code § 203 and the payment of final wages as specifically described herein.

(Ex. A to Notice of Removal, ECF No. 1-3 ¶ 25). Brumbach alleges that "Defendants had a consistent and uniform policy, practice and procedure of failing to pay the earned wages of Defendants' former employees[.]" (*Id.* ¶ 86). Brumbach alleges that "Defendants willfully failed to pay the members of the LC 203 Class their entire wages due and owing at the time of their termination or within seventy-two (72) hours of their resignation, and

failed to pay those sums for up to thirty (30) days thereafter." (*Id.* ¶ 87). Brumbach and the LC 203 Class seek "recovery as authorized by Labor Code § 203[.]" (*Id.* at 33).

In the Notice of Removal, Hyatt alleges that the amount in controversy on the waiting time penalties claim is $3,468,960.00. Hyatt calculates the time period on the waiting time penalties claim as October 9, 2017, to the present—three years preceding the filing of the Complaint on October 9, 2020. Strittmatter states in his Declaration:

> From October 9, 2017 to the present, there were a total of approximately 825 non-exempt hourly employees at the Manchester Grand Hyatt San Diego Hotel who were terminated from employment with Defendant. The average rate of pay for these individuals is approximately $17.52 per hour.

(Strittmatter Decl., ECF No. 1-4 ¶ 8). Hyatt assumes that every terminated employee is entitled to the maximum thirty days of waiting time penalties.

In Strittmatter's Supplemental Declaration, he provides further specifics of the terminated employees' average hourly pay:

> Of these 825 former hourly employees, 559 of those employees were full-time and 266 were part-time. The average rate of pay for the full-time employees was $19.17 per hour, and the average rate of pay for the part-time employees was $14.07 per hour.

(Strittmatter Supp. Decl., ECF No. 12-1 ¶ 8). Hyatt asserts in the Opposition to the Motion to Remand that the amount in controversy on the waiting time penalties claim based on the average pay separated by full-time and part-time employees is $3,020,961.60.

An employer's failure to timely pay wages owed to terminated employees results in a penalty of the employee's wages for every day that it is late, up to a maximum of thirty days' wages. *See* Cal. Lab. Code § 203(a). The statute of limitations for waiting time penalties is three years. *See* Cal. Code Civ. Proc. § 338(a).

Hyatt's calculation of the class period on the waiting time penalties claim as October 9, 2017, to the present is consistent with Brumbach's allegations that wage and hour violations occurred from four years preceding the filing of the Complaint through trial, and that unlawful rounding occurred "until *at least* approximately June 1, 2019[.]" Ex. A to

Notice of Removal, ECF No. 1-2 ¶ 40 (emphasis added)); *see Arias*, 936 F.3d at 927 (the amount in controversy "reflects the maximum recovery the plaintiff could reasonably recover"). Hyatt's assumption that every terminated employee is entitled to the maximum thirty-day waiting time penalties is reasonable in light of Brumbach's allegations that "Defendants had a consistent and uniform policy, practice and procedure of failing to pay the earned wages of Defendants' former employees" and "failed to pay the members of the LC 203 Class their entire wages due . . . for up to thirty (30) days [ ]." (*Id.* ¶¶ 86-87). The Court concludes that Hyatt's assertion that the amount in controversy on the waiting time penalties claim is at least $3,020,961.60 is supported by the evidence presented, the allegations in the Complaint, and reasonable assumptions.

Based on the Declarations provided by Hyatt and reasonable assumptions supported by the Declarations and the allegations in the Complaint, the amount in controversy on the first, second, third, and fifth claims exceeds $5,000,000. The Court concludes that Hyatt demonstrates by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 under CAFA.[1]

## V. JURISDICTIONAL DISCOVERY

Brumbach requests that "if the Court contemplates denying this Motion to Remand based on Defendant's evidence, . . . the Court delay a decision pending completion of limited discovery." (ECF No. 7 at 26). Brumbach asserts:

> Plaintiff does not have access to any of the information that is required to calculate the amount in controversy . . ., including the number of members of the pertinent classes, the frequency of violations, the length of class members' work days and how many days per week and weeks per year they worked, or the number of wage statements that were inaccurate . . . . Plaintiff requests that opportunity to gather this evidence to rebut Defendant's assertions regarding the amount in controversy.

(*Id.*).

---

[1] Brumbach does not challenge Hyatt's allegation that the parties are minimally diverse.

A district court has discretion to permit or deny jurisdictional discovery. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). "Discovery may be appropriately granted when pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* In this case, Brumbach has not shown that jurisdictional discovery would change the Court's analysis. The Court has concluded that Hyatt has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.00. The Court declines to exercise its discretion to permit jurisdictional discovery.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Remand to State Court (ECF No. 7) is denied.

Dated: March 11, 2021

Hon. William Q. Hayes
United States District Court