UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. BRUMBACH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION, a Delaware corporation doing business as Manchester Grand Hyatt San Diego; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 20-cv-2231-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Final Approval of Class Action Settlement (ECF No. 55) filed by Plaintiff Michael D. Brumbach.

**I.   PROCEDURAL BACKGROUND**

On October 9, 2020, Plaintiff Michael D. Brumbach filed a wage and hour Class Action Complaint against Defendants Hyatt Corporation d/b/a Manchester Grand Hyatt San Diego ("Defendant" or "Hyatt") and Does 1 through 100 in the San Diego County Superior Court (the "Brumbach Action"). (Ex. A to Notice of Removal, ECF No. 1-2 at 6.) On November 16, 2020, Hyatt removed the Brumbach Action to this Court. (ECF No. 1.)

On November 30, 2022, Plaintiff filed the First Amended Class Action Complaint ("FAC"). (ECF No. 35; *see also* ECF No. 36 (granting the filing of the amended complaint).) The FAC brings the following claims against Defendant: (1) failure to provide all meal periods; (2) failure to authorize and permit rest periods; (3) failure to timely furnish accurate itemized wage statements; (4) failure to pay final wages due at termination in violation of California Labor Code § 203; (5) enforcement of civil penalties under California Labor Code § 2699; and (6) unfair business practices in violation of California Business & Professions Code § 17200. The FAC requests declaratory and injunctive relief, recovery of unpaid wages, restitution, damages for actual injury, statutory penalties, civil penalties, interest, and attorneys' fees and costs.

On October 18, 2023, Plaintiff filed a Notice of Settlement. (ECF No. 49.) On December 18, 2023, Plaintiff filed a Motion for Preliminary Approval of Class and Representative Action Settlement. (ECF No. 51.) On March 18, 2024, the Court issued an Order granting the Motion for Preliminary Approval of Class and Representative Action Settlement. (ECF No. 53.) The Court preliminarily approved the Stipulation and Settlement of Class and Representative Action (the "Settlement Agreement"); conditionally certified the Class; appointed the firm the Law Offices of Kevin T. Barnes as Class Counsel; appointed Plaintiff Michael D. Brumbach as Class Representative; appointed Rust Consulting Inc. as the Settlement Administrator; and approved the class notice plan and procedures.

On June 21, 2024, Plaintiff filed the Declaration of Kevin T. Barnes Regarding All Participation, Objections, and Opt Outs by Class Members. (ECF No. 54.)

On June 27, 2024, Plaintiff filed the Motion for Final Approval of Class Action Settlement. (ECF No. 55.)

On July 31, 2024, the Court held a final approval hearing. No Class Member appeared.

/ / /

/ / /

## II. TERMS OF PROPOSED SETTLEMENT

The Stipulation and Settlement of Class and Representative Action ("Settlement Agreement") defines "Class Members" or "Settlement Class" as "all hourly-paid, non-exempt employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job positions with substantially similar titles and/or duties as these at Defendants' Manchester Grand Hyatt San Diego restaurants/cocktail lounges during the Class Period (defined as October 9, 2016, through the date the Court grants Preliminary Approval of this settlement, or December 30, 2023, whichever is earlier)." (ECF No. 51-2 at 28.) The "Class Period" is "October 9, 2016, through the date the Court grants Preliminary Approval of this settlement, or December 30, 2023, whichever is earlier."[1] *Id.* "Any Class Member who does not affirmatively opt out of the Settlement Agreement, by timely and valid Request for Exclusion, will be bound by all its terms, including those pertaining to the Released Claims." *Id.* at 45.

The "Class Settlement Amount" section of the Settlement Agreement provides that Defendant will pay "[t]he sum of no more than a Gross Settlement Amount ('GSA') of $885,000." *Id.* at 29. The Class Settlement Amount includes the following: "all Individual Settlement Payments to Class Members, the Class Representative's Service Award to the named Plaintiff, Settlement Administration Costs to the Settlement Administrator, the Labor and Workforce Development Agency Payment, and the Attorneys' Fees and Costs." *Id.* Defendant will additionally "be responsible for any employer payroll taxes required by law, separate and in addition to the Class Settlement Amount, including the employer FICA, FUTA, and SDI contributions on the wage portion of the Individual Settlement Payments." (ECF No. 51-2 at 29.) Per the Settlement Agreement, the parties estimated the following deductions from the Class Settlement Amount: (1) attorneys' fees of $221,250 and attorney costs not to exceed $35,000; (2) claims administration costs of $16,000; (3)

---

[1] The Court granted Preliminary Approval on March 18, 2024. (ECF No. 53.)

service award of $15,000 for Plaintiff; and (4) $24,000 to the Labor and Workforce Development Agency ("LWDA") in connection with the claims arising under the California Private Attorneys' General Act ("PAGA") to be allocated to resolving any Class Members' Settlement arising under the PAGA, $18,000 (75%) of this amount will be paid to the LWDA and $6,000 (25%) will be included in the Net Settlement Amount." *Id.* at 31, 39–40. The remaining "Net Settlement Amount" will be the portion of the Class Settlement Amount after deduction of the approved Class Representative Service Award, Settlement Administration Costs, LWDA Payment, and the Attorneys' Fees and Costs.

The "Individual Settlement Payment" is "[e]ach Class Member's share of the Net Settlement Amount, which shall be distributed to the Class Members, less employee portions of state and federal withholding taxes, including the employee FICA, FUTA and SDI contributions and any other applicable payroll deductions required by law as a result of the payment of the amount allocated to such Class Member as set forth herein." *Id.* at 30. The Individual Settlement Payments are calculated "based on the number of workweeks that a Class Member worked during the Class Period." *Id.* at 24.

The average Individual Settlement Payment is currently estimated to be approximately $667.15, and the highest is estimated to be approximately $1,733.86. (ECF No. 55-1 at 9.)

### III.  NOTICE, OPT-OUTS, & OBJECTIONS TO THE SETTLEMENT

"Between April 8, 2024 and April 17, 2024, Counsel for the Defendants provided Rust[, the Claims Administrator,] with a series of data files containing the mailing list of Class Member's names, last known addresses, Social Security Numbers and files containing applicable employment information." (Schwermer-Sween Decl., ECF No. 55-2 at 15.) 871 potential Class Members were found from the data on the Class Lists. *Id.* "The mailing addresses contained in the Class Lists were processed and updated utilizing the National Change of Address Database ('NCOA') maintained by the U.S. Postal Service." *Id.* If an individual had filed a change of address request with the U.S. Postal Service, "the

addresses listed with the NCOA would be utilized in connection with the mailing of the Notice." *Id.*

On April 29, 2024, Rust mailed via First Class mail Notices to 871 Class Members, advising "they could submit an exclusion, objection and/or dispute postmarked by June 13, 2024." *Id.* "Rust performed 66 address traces on Class Notices returned as undeliverable for the first time as of June 13, 2024." *Id.* Of the 66 traces Rust performed, "50 more current addresses were obtained and Class Notices were promptly re-mailed to those Class Members via First Class Mail." *Id.* Of the 66 traces, "Rust did not obtain updated addresses for 16 undeliverable Class Notices." *Id.* Four class notices were returned to Rust as undeliverable a second time of the 50 Class Notices that were re-mailed. *Id.* As of June 20, 2024, "20 Class Notices remain undeliverable"; "four (4) Class Notices were returned by the Post Office with forwarding addresses attached as of June 13, 2024" and "Rust promptly re-mailed Class Notices to those Class Members via First Class mail"; "Rust received five (5) request to re-mail the Notice which were promptly re-mailed via First Class mail"; "zero (0) Class Members disputed the employment information provided by the Defendant"; "Rust received one (1) request for exclusion"; and "Rust received zero (0) objections." *Id.* at 15–16.

## IV. CLASS CERTIFICATION

Plaintiff contends that certification of the proposed Class for the purposes of settlement is appropriate pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff contends that the numerosity requirement is satisfied because there are approximately 890 Class Members. (ECF No. 51-1 at 18.) Plaintiff contends that the commonality and predominance requirements are satisfied because "the main issues involve the legality of Defendant's meal and rest period policies, and the validity of their wage statements" and "[w]hether each member of the Class might be required to ultimately justify an individual claim does not preclude maintenance of a class action." *Id.* at 19. Plaintiff contends that "these are all company policy questions that are uniform and can be proven by common objective evidence." *Id.* Plaintiff contends the typicality requirement

is satisfied because Plaintiff "is an hourly-paid non-exempt person employed by the Defendant in the state of California during the relevant time period and therefore, who worked under the same policies and procedures for the entire period, as all other putative Class Members." *Id.* at 20. Plaintiff contends that the adequacy requirement is satisfied because he has "the same injuries and damages similar to those the class Plaintiff seeks to represent," "no claims that are antagonistic to the class," and counsel that are "very experienced and qualified." *Id.*

In the Court's Order granting the Motion for Preliminary Approval of Class and Representative Action Settlement, the Court conditionally certified, for settlement purposes only, the following Class:

> The Settlement Class is as follows: All hourly-paid, non-exempt employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendant's job positions with substantially similar titles and/or duties as these at Defendant's Manchester Grand Hyatt San Diego restaurants/cocktail lounges during the Class Period (defined as October 9, 2016, through December 30, 2023). It shall be an opt-out class.

(ECF No. 53 at 3.)

To approve the settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the proposed Class must be certified for the purposes of settlement. *See* Fed. R. Civ. P. 23(e) (permitting settlement of "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement"); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (addressing the propriety of class certification in examining decision to approve settlement). Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). In this case, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no absolute threshold, courts generally find numerosity satisfied when the class includes at least forty members. *See, e.g.*, *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010). Here, there are more than 800 Class Members. (ECF No. 51-1 at 18.) The Court finds that Plaintiff has satisfied the numerosity requirement of Rule 23(a)(1).

To satisfy Rule 23(a)(2), a party seeking class certification must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The core concern of the inquiry is that the common contention at the heart of the claims be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Under Rule 23(b)(3), Plaintiff must further show that the common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Though there is substantial overlap between [the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance tests], the [Rule] 23(b)(3) test is 'far more demanding.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

The claims in this case stem from Defendant's widespread employment practices, including Defendant's meal and rest break, wage statement, and final wages due at termination practices. The class-wide claims rely on common evidence and turn on the determination of factual and legal issues associated with Defendant's general employment practices. Little individualized inquiry appears necessary. The Court finds that Plaintiff has satisfied the commonality requirement of Rule 23(a)(2) and the predominance requirement

of Rule 23(b)(3). *See Staton*, 327 F.3d at 954 (affirming finding of commonality of challenged practices that were "widespread and entrenched").

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) *overruled on other grounds by Dukes*, 564 U.S. at 338. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiff was a non-exempt employee of Defendant who was injured by the employment practices that form the basis for the class-wide allegations. (*See* ECF No. 55-1 at 12–13; Brumbach Decl., ECF No. 55-2 at 78.) The Court finds that Plaintiff has satisfied the typicality requirement of Rule 23(a)(3).

The adequacy requirement of Rule 23(a)(4) is satisfied if the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the adequacy requirement has been met, courts ask: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. Here, the record reflects that there is no evidence of any conflict of interest between Plaintiff and the Settlement Class. The record further reflects that Plaintiff has prosecuted this action vigorously. (*See* ECF No. 55-1 at 13, 24; Barnes Decl., ECF No. 55-2 at 5–6.) The Court finds that Plaintiff has satisfied the adequacy requirement of Rule 23(a)(4).[2]

---

[2] Consideration of whether the Settlement Agreement itself was the result of disinterested representation "is better dealt with as part of the substantive review of the settlement than under the Rule 23(a) inquiry." *Staton*, 327 F.3d at 958.

|   |   |
|---|---|
| 1 | All the requirements of Rule 23(a) and 23(b)(3) have been satisfied. The Court certifies the proposed Class for the purposes of settlement. |

## V. FAIRNESS OF THE SETTLEMENT

Plaintiff contends that the proposed settlement is "fair, reasonable, and adequate." (ECF No. 55-1 at 14.) Plaintiff contends that "Class Counsel has substantial experience in wage and hour class action cases, all of whom courts have approved as Class Counsel in numerous other wage and hour class actions." *Id.* at 12, 18. Plaintiff contends that "[t]he proposed Settlement here is the product of arm's-length negotiations, as the parties reached the Settlement following two formal mediations on May 19, 2023 and September 20, 2023 with Steve Serratore, Esq., a mediator who is very experienced in wage and hour class action cases." *Id.* at 12. Plaintiff contends that "[t]he Parties reached the Settlement after extensive factual and legal research, law and motion practice including Plaintiff's Motion for Remand and Defendant's Motion to Stay, formal discovery including propounding and responding to written interrogatories, the production of documents, and attending one Early Neutral Evaluation and two mediations." *Id.* at 13, 17. Plaintiff contends that the Settlement of $885,000 is "approximately 57% of the realistic class exposure" of $1,541,706. *Id.* at 14. Plaintiff contends "the risk related to class certification, trial, and the prospect of appeals by the losing party is a real risk and could lead to further protracted litigation, delay, and increased costs and risks to the Plaintiff and Class Members." *Id.* Plaintiff contends that because the class had not yet been certified when the parties reached the proposed Settlement, "the risks of obtaining class certification and a subsequent motion by Defendant to decertify all or parts of the case prior to trial and throughout the trial itself are substantial"; "[a]bsent settlement, there was a risk that the Court would not certify this case, or would decertify the class at the time of trial"; and "[t]he court of appeal could also decertify the class on appeal." *Id.* at 15. Plaintiff contends that his "ability to maintain a certified class and prevail on their claims was far from guaranteed." *Id.* at 16. Plaintiff contends that "[g]iven the litigation risks involved, including the risk that the Court might not certify the class, or decertify it at a later time, the risk of proving liability and damages

at trial, and keeping the verdict through appeal, the proposed Settlement is well within the realm of fair, reasonable, and adequate." *Id.* Plaintiff contends that "[p]er Court Order, the Class Members received the Class Notice of the pending Settlement. No Class Member objected to the Settlement." *Id.* at 18.

"To guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed R. Civ. P. 23(e)(2)). Courts consider several factors in determining the fairness of a proposed settlement, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction [to] the class members of the proposed settlement.

*Id.* at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). However, a "higher level of scrutiny for evidence of collusion or other conflicts of interest" is appropriate for settlements reached prior to class certification. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946.

Plaintiff faces multiple hurdles to prevailing on his claims, including class certification, the possibility of summary judgment, and trial. The record reflects that Defendant maintains several defenses to Plaintiff's claims, which could foreclose certification, negate liability, or reduce Plaintiff's ultimate recovery. The Court concludes

that the strength of Plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, and the risk of maintaining class action status throughout any trial weighs in favor of approval.

Pursuant to the terms of the Settlement Agreement, the "Gross Settlement Amount" is $885,000. (ECF No. 51-2 at 29.) The average Individual Settlement Payment is estimated to be approximately $667.15, and the highest Individual Settlement Payment is estimated to be approximately $1,733.86. (ECF No. 55-1 at 9.) While Class Counsel estimates that the total potential recovery on all claims to be over $1,541,706 (ECF No. 55-1 at 15), "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just.*, 688 F.2d at 628. Weighed against the strength of Plaintiff's case, the proposed settlement amount provides a fair resolution of the claims in this case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding that an award of roughly one-sixth of the potential recovery was fair and adequate).

Class Counsel have expended approximately 296.2 hours litigating the action over the past four years. (*See* Barnes Decl. at 7.) The parties' investigations, informal and formal discovery, motion practice, and mediations weigh in favor of approval. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.") (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

Class Counsel Kevin T. Barnes submits a declaration indicating that he has significant experience in wage and hour class action litigation, Class Counsel's firm has "been involved in numerous favorable appellate court decisions which have been very important in wage and hour class action law," and "Class Counsel are experienced and qualified to evaluate the Class claims and viability of the defenses." (Barnes Decl. at 2–9.) The experience and views of Class Counsel weigh in favor of approval.

Only one individual has opted out of the settlement, and no objections to the settlement have been made. *See id.* at 8. The reaction of the Class Members to the proposed settlement weighs in favor of approval. *Cf. Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) ("The opposition of a significant number of the members of the class to a proposed settlement is a factor to be considered when approving a settlement." (citations omitted)).

Under the Settlement Agreement, the payout of $221,250 in attorneys' fees is not separate and apart from class funds and fees awarded. (ECF No. 51-2 at 27.) The Settlement Agreement provides that "[t]he settlement will be on a common fund basis, there will be no claim form or Settlement process and there will be no reversion to Defendant." *Id.* at 29. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947 (stating that signs of collusion include when counsel receive a disproportionate distribution, when the parties provide for the payment of fees separate and apart from class funds, and when the parties arrange for fees not awarded to revert to the defendants). There is no other evidence of collusion or conflict of interest in the record and the participation of a mediator in reaching the settlement in this case "weigh[s] in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948. The Court finds that the settlement is fundamentally fair, adequate, and reasonable, and that no evidence of collusion or conflict of interest exists.

## VI. ATTORNEYS' FEES AND COSTS

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of the award. *Id.* at 942.

Class Counsel requests an award of attorneys' fees of $221,250—25% of the total value of the Settlement. (Barnes Decl., at 5–6.) Under the percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Viscaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). This case involves a relatively moderate settlement amount of $885,00, which supports a standard 25% award. *Cf. In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 (explaining that in cases with nine-figure "megafunds," a 25% attorneys' fee award is often inappropriate).

The reasonableness of a percentage-of-recovery fee award can also be determined by cross-checking the amount of the award against the amount that would be awarded under the lodestar method. *See Viscaino*, 290 F.3d at 1050–51. In this case, Class Counsel's hourly rate and time expended are reasonable. Class Counsel's lodestar of $256,319 compared to the fee requested of $221,250, which reflects "a negative multiplier and only 86% of [the] firm's lodestar." (Barnes Decl. at 8.) The Court concludes that nothing in this case requires departure from the 25% standard award. The Court approves the request for attorneys' fees in the amount of $221,250.

Class Counsel further requests reimbursement of $24,194.85 in litigation costs and provides a chart itemizing these costs.[3] (*See* ECF No. 55-2 at 31.) Class Counsel is entitled to reimbursement of the out-of-pocket costs reasonably incurred in investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. The Court approves the request for litigation costs and expenses in the amount of $24,194.85.

---

[3] The costs incurred in prosecuting the action is less than the $35,000 maximum provided in the Settlement Agreement. (*See* ECF No. 51-2 at 39 (providing that the costs associated with the litigation and settlement of the Action would not exceed $35,000).)

## VII. ADMINISTRATIVE COSTS

Plaintiff requests that the Court award $16,000 in administrative costs to Rust Consulting, the Claims Administrator. (ECF No. 55-1 at 27.) Rust "obtained a mailing address of Hyatt Settlement Class Administrator," a toll-free telephone number, and a facsimile number; prepared a draft of the formatted Notice; mailed and re-mailed notices to Class Members; and performed address traces. (Schwermer-Sween Decl. at 15–16.) Courts regularly award administrative costs associated with providing notice to the class. *See, e.g.*, *Vasquez v. Kraft Heinz Foods Co.*, 3:16-cv-2749-WQH-BLM, 2020 WL 1550234, at *8 (S.D. Cal. Apr. 1, 2020). The Court concludes that Rust's costs were reasonably incurred for the benefit of the Class and approves the request for administrative costs in the amount of $16,000.

## VIII. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Final Approval of Class Action Settlement (ECF No. 55) is granted as follows:

1. This Court has jurisdiction over the claims of the settlement Class Members asserted in this proceeding and over all parties to the action.

2. For the reasons set forth in the Preliminary Approval Order, which are adopted and incorporated herein by reference, this Court finds that the applicable requirements of the Federal Rule of Civil Procedure 23 have been satisfied with respect to the Settlement Class and the proposed settlement.

3. The Class Definition is as follows: all hourly-paid, non-exempt employees who worked as bartenders, barbacks, waiters, cocktail servers, server assistants, food runners, bouncers, and any of Defendants' job positions with substantially similar titles and/or duties as these at Defendants' Manchester Grand Hyatt San Diego restaurants/cocktail lounges during October 9, 2016, through December 30, 2023. It shall be an opt-out class.

4. The notice given to the settlement Class Members fully and accurately informed the Class Members of all material elements of the proposed settlement and of

their opportunity to object or comment thereon; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with the laws of the State of California, Federal Rules of Civil Procedure, the United States Constitution, due process and other applicable law. The summary notices fairly and adequately described the settlement and provided Class Members adequate instructions and a variety of means to obtain additional information. A full opportunity has been afforded to the settlement Class Members to participate in this hearing, and all settlement Class Members and other persons wishing to be heard have been heard. Accordingly, the Court determines that all settlement Class Members who did not timely and properly opt out are bound by this judgment and order. There was one (1) opt out to this settlement.

5. Pursuant to California law and Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval to the settlement and finds that it is fair, reasonable and adequate, and in the best interests of the settlement Class Members as a whole. Accordingly, the Court hereby directs that the settlement be effected in accordance with the Stipulation and Settlement of Class and Representative Action and the following terms and conditions.

6. With this final approval of the proposed settlement, it is hereby ordered that all members of the Settlement Class who have not opted out of the Settlement Class fully release and discharge Defendant and each of its present and former affiliates and subsidiaries, and all of their respective officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, consultants, shareholders, joint ventures, successors, and assigns and any other persons acting by, through, under or in concert with any of them that could be liable for any of the Released Claims. In addition, all members of the Settlement Class, regardless of whether or not they opted out of the Settlement Class, fully release and discharge Defendant and each of its present and former affiliates and subsidiaries, and all of their respective officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, consultants, shareholders, joint ventures, successors, and assigns and any other persons acting by, through, under or in concert with

any of them that could be liable for any of the PAGA Released Claims. The "Released Claims" and the "PAGA Released Claims" from the Stipulation and Settlement Of Class And Representative Action are incorporated herein. The release shall cover any claims arising within the scope of the lawsuit arising from October 9, 2016 to December 30, 2023.

7. The Class Representative additionally waives all rights and benefits afforded by California Civil Code §1542 and do so understanding the significance of that waiver. Section 1542 provides: A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

8. It is hereby ordered that a Class Representative Service Award of $15,000 to Michael D. Brumbach is fair and reasonable.

9. It is hereby ordered that the attorneys' fee request of $221,250, $24,194.85 as costs of litigation, and $16,000 as costs for the Claims Administrator fees, which amounts shall be paid out of the total settlement amount as set forth in this settlement is hereby granted pursuant to federal law because, inter alia, Plaintiff's counsel's request falls within the range of reasonableness and the result achieved justifies the award.

10. It is hereby ordered that the $24,000 PAGA payment shall be made, with $18,000 payable to the Labor Workforce Development Agency and shall be paid out of the total settlement amount as set forth in this settlement.

11. Without affecting the finality of this matter, this Court shall retain exclusive and continuing jurisdiction over this action and the parties, including all settlement Class Members, for purposes of supervising, administering, implementing, and enforcing, and interpreting the settlement, and the claims process thereunder

12. The Court will enter final judgment in this case. No later than ten (10) days from the date this Order is filed, the parties shall file a proposed judgment.

Dated: July 31, 2024

Hon. William Q. Hayes
United States District Court